HENRY DECKARD v. THE STATE.

No. 156.    Decided December 1, 1909.

**1.—Murder—Jury and Jury Law—Idem Sonans.**

Where the return of the officer on the writ for a special venire was for Rowland Smith, when he should have summoned and made return for Roland Smith, it was clearly *idem sonans*, and there was no error.

**2.—Same—Special Venire.**

Where a juror whose name had been misspelled in the return of the officer, on the writ of special venire, was not selected on the jury, there was no error.

**3.—Same—Evidence—Moral Turpitude of Witness.**

Where, upon trial for murder, the defendant objected to the action of State's counsel in showing orally, by one of defendant's witnesses, that the latter had been convicted of theft of a hog, instead of introducing the judgment and sentence of such conviction, as required; yet where on appeal the appellant's bill of exceptions did not show that the testimony of his said witness was material to his defense, there was no error.

**4.—Same—Evidence—Moral Turpitude of Witness.**

Where, upon appeal from a conviction of manslaughter, the record disclosed that the witness whose credibility defendant sought to attack for having served on the poor farm had not been arrested within the last thirty years, there was no error; besides, the bill of exceptions did not show what the witness would have answered in reference to said confinement on the poor farm.

**5.—Same—Evidence.**

On trial for murder there was no error in permitting State's counsel to ask one of his witnesses whether another witness in the case, who was present at the killing, had a pistol.

**6.—Same—Evidence.**

Upon trial for murder there was no error in permitting State's counsel to ask a State's witness where deceased kept his pistol before coming to the county of the homicide, and that it was at witness' house.

**7.—Same—Evidence—Bill of Exceptions.**

Where, upon appeal from a conviction of manslaughter, the bill of exceptions did not show what the answer of the witness was to the question as to how much of his time for the past two years he had spent in jail, the same could not be reviewed.

Appeal from the District Court of Hill.    Tried below before the Hon. W. C. Wear.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The testimony discloses that the defendant and deceased, their wives and others were together seemingly in friendly conversation; that the defendant's wife and the deceased were apparently joking each other, when the trouble began.

The wife of the deceased testified that at this juncture her husband sat on a box and asked her to hand him his coat, and that the witness handed him the coat; that the defendant put on his coat, loaded his gun and shot the deceased with a shotgun and killed him; that the wife of the deceased asked defendant not to shoot, but that the latter said he would "shoot his damned brains out;" that this was at Ivry McIlroy's place, in Hill County, and that the killing took place in said house.

The wife of the defendant testified that she was present at the killing and that the deceased was sitting down joking with the folks, but that deceased became angered and called her a 'liar and asked his wife to hand him his coat; that defendant got up and put on his coat and that then deceased called defendant a son-of-a-bitch and asked him what he was going to do, throwing his gun down on defendant snapping it; that then defendant made for his gun and shot the deceased; that before this difficulty all the parties were sitting down, joking with each other, and that seemingly because the witness got the better of the deceased in joking him that he became angered and gave "the damned lie."

The defendant testified that the matter all started in a frolic and deceased became angered and called defendant's wife "a damned lie;" that the defendant tried to pacify him; that both put on their coats and that deceased called him a son-of-a-bitch snapping his gun at him, when he got his gun and shot the deceased, killing him. Other facts are stated in the opinion.

*H. L. Davis,* for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.

BROOKS, Judge.—Appellant was convicted of manslaughter and his punishment assessed at two years confinement in the State penitentiary.

Bill of exceptions No. 1 shows that appellant moved the court to quash the special venire for the reason that same was not drawn in accordance with the law in that the law provides that not less than thirty-six men shall be drawn for the venire in capital cases; and for the further reason that the returns of the officer in this instance show that the said thirty-six men so named could not be found, and the further reason that the officer did not summon the parties named

therein, but summoned other and different men to those drawn, namely: He summoned and made return for one Rowland Smith, when he should have summoned and made return for one Roland Smith. This is clearly *idem sonams* and no error. The bill further shows that the officer made return for one G. W. McMichael when he should have served and made return on one G. W. Michael. The record shows that only one of the parties named, to wit, Roland Smith, was selected as a juror in the cause. There is no merit in the motion to quash and the court did not err in refusing same.

Bill of exceptions No. 2 shows that while Holbert Martin was testifying in behalf of the defendant, he was asked by State's counsel the following: "Is it not a fact that you have been convicted and sentenced to a term in the reformatory for stealing a hog?" Upon an affirmative answer by the witness, counsel for the State objected to the witness testifying on the ground that he was not a competent witness, which objection was sustained by the court, and to which ruling of the court the defendant then and there in open court excepted for the reason that the records of such conviction and sentence were the best evidence and for the further reason that said conviction and sentence would not disqualify the witness until final action upon said conviction was had by the court of last resort to which witness might choose to appeal; and for the further reason that under the law a convicted person under the age of sixteen years may have such sentence probated at the discretion of the court and so long as he may be out on probation such sentence has no force and effect; and for the still further reason that the witness testified in effect that he had never received sentence, but that he was out by and with the consent of the court and prosecuting attorney, and that he had never in fact accepted the purported sentence. Where a party seeks to disqualify a witness, in order to do so he must show a valid judgment and sentence, but in the shape of the bill before us we can not say whether appellant was injured by the ruling of the court or not, since the bill does not attempt to show what the witness' testimony would have been, whether same was favorable or unfavorable, therefore we can not say whether there was any error in the matter or not. See King v. State, this day decided.

Bill of exceptions No. 3 shows that when George Washington was testifying in behalf of the State, the appellant's counsel on cross-examination, asked him the following question: "You never have served a term on the poor farm?" State's counsel objected to the question on the ground that it did not state the time or date so as to show that it was at a time recent enough to be admissible. The court attached to the bill the statement that the witness had not been arrested within the last thirty years. This disposes of appellant's objection. Furthermore, the bill is defective in not stating

what the witness would have stated in reference to being confined on the poor farm.

Bill of exceptions No. 4 shows that State's counsel asked George Washington the following question: "Do you know whether or not Holbert Martin owned a pistol?" Appellant objected to the question on the ground that it was extraneous matter, and immaterial, and irrelevant to the question at issue, which objection being overruled the witness answered: "I know he had one." Appellant further excepted for the reason that it deprived the defendant of the privilege of proving by the witness himself, Holbert Martin, that he in fact did not own or have in his possession at any time a pistol. This would not disqualify Holbert Martin to testify, and the fact of his disqualification would not render inadmissible testimony from other witnesses who were qualified.

Bill No. 5 shows that Bettie Washington was asked the following question by the State: "Where did Will Washington keep his pistol before he came from Waco to the cotton patch to Hill County to pick cotton?" Appellant objected to this testimony on the ground that it was irrelevant and immaterial, and for the further reason that it was not shown that the witness knew that Will Washington owned any pistol, or had in his possession other pistols than the one she had seen in Waco. Objection being overruled the witness answered: "I had it at my house. He stayed with me for a while." The objections of appellant did not render the testimony of the witness inadmissible, but it merely goes to the weight thereof, and therefore the court did not err in admitting the testimony.

While the defendant was on the stand in his own behalf the State on cross-examination asked him the following question: "How much of the time for the past two years have you spent in the McLennan County jail?" Appellant's counsel objected thereto for the reason that same was immaterial and irrelevant, had no connection with the charge for which he was being tried, and for the further reason that the answer would prejudice the mind of the jury whether he should answer in the negative or affirmative. The bill of exceptions does not show what the answer was, or whether he answered the question at all. Therefore we can not pass intelligently upon the question raised in appellant's sixth bill of exceptions.

The charge of the court is in all things correct and admirably presents all the law applicable to the facts of this case. We have carefully reviewed all of appellant's exceptions, and finding no error in this record the judgment is in all things affirmed.

*Affirmed.*

[Rehearing denied December 22, 1909.—Reporter.]